The Salt Springs National Bank of Syracuse, Appellant,
*v.* George B. Sloan, Respondent.

*It seems* that one who guarantees generally the collection of a demand,
thereby undertakes that it is collectible by due course of law, and only
promises to pay when it is ascertained that it cannot be collected by suit,
prosecuted to judgment without unnecessary delay against the princi-
pal, and execution issued thereon, and an endeavor so to collect is a con-
dition precedent to a right of action against the guarantor.

Insolvency is no excuse for a failure to prosecute.

While in most cases the question as to what constitutes due diligence in the
prosecution of such an action, where it arises upon undisputed evidence,
is one of law only, if different inferences may fairly be drawn by
equally intelligent and unbiased men from the evidence, it is for the
jury to determine the question under proper instructions from the court.

Defendant executed a bond which recited that certain drafts had been
drawn upon the firm of B. & C., which were accepted by said firm and
discounted by plaintiff; also, that the said firm had made an assignment
for the benefit of creditors before any of the drafts became due. The
condition of the bond was that defendant would within one year from its
date pay plaintiff any sum remaining unpaid on said drafts up to $5,000,
and which it, "after due diligence, shall fail to collect" within that time
from the drawers or their assignee. In an action upon the bond, *held*,
that the rule governing general guarantees of collection, did not apply,
as due diligence might be exercised during the time limited and yet no
judgment have been recovered; that while the condition required the
exercise of due diligence against both assignors and assignee this, in
case the assignment was valid, did not require the immediate com-
mencement of legal proceedings against the assignee; that as long
as he was proceeding with proper celerity in the execution of his trust,
plaintiff was not required to take any legal action against him; that,
while in case the assignment was fraudulent as against creditors, an
action against the assignors and assignee might be necessary, if plaintiff
examined this question with due diligence and ascertained that there
were no grounds upon which to base an attack upon the assignment, and
if the assignee duly performed his duties during the year, it could not
be determined as matter of law that plaintiff had failed to exercise due
diligence in this regard; that the fact that investigations in regard to
the validity of the assignment were in progress might properly be con-
sidered upon the question as to whether due diligence was used as against
the assignors; and, if it appeared that plaintiff was engaged in an inves-
tigation made in good faith and for the purpose of determining as to
whether an action in tort or one upon the drafts should be brought

against the assignors, it could not be said as matter of law that pending such investigation due diligence was not used, but the question was one of fact for the jury.

(Argued June 15, 1892; decided October 11, 1892,)

APPEAL from order of the General Term of the Supreme Court in the fourth judicial department, made July 7, 1891, which reversed a judgment in favor of plaintiff entered upon a verdict and ordered a new trial.

This action was brought upon a bond, the terms of which as well as the facts, so far as material, are stated in the opinion.

*Frank H. Hiscock* for appellant. Defendant's sole defense is that plaintiff has been so guilty of laches under the bond and agreement, in not using due diligence to collect its drafts of Baker & Clark, as to discharge defendant, a surety, upon said bond, conclusively and as matter of law. This defense was not established and ought not to have been sustained by the General Term; but at most defendant was only entitled, as the Circuit judge ruled, to have the jury say whether plaintiff had been so guilty of laches. (*Van Vechten* v. *Pearson*, 5 Paige, 512; *Miller* v. *Phillip*, 5 id. 573; *Roome* v. *Phillips*, 24 N. Y. 463; *People* v. *Van Rensselaer*, 8 Barb. 200; *White* v. *Case*, 13 Wend. 543; *Dobbin* v. *Bradley*, 17 id. 422; *Schmitz* v. *Langhaar*, 88 N. Y. 503, 507; *Burt* v. *Horner*, 5 Barb. 501; *Mead* v. *Parker*, 111 N. Y. 259, 262; *C. N. Bank* v. *Pratt*, 40 N. Y. S. R. 789; *Gallagher* v. *White*, 31 Barb. 94; *Penniman* v. *Hudson*, 14 id. 580–81; *Backus* v. *Shepherd*, 11 Wend. 631, 634; *Lamourieux* v. *Hewitt*, 5 id. 307, 308; *Thomas* v. *Woods*, 4 Cow. 180; *Tiffany* v. *Willis*, 30 Hun, 266; *N. Ins. Co.* v. *Wright*, 76 N. Y. 445; *Craig* v. *Parkis*, 40 id. 186.)

*Elisha B. Powell* for respondent. Plaintiff must stand or fall upon his case as it stood when summons was served March 17, 1888. The execution had not then been returned. (*Smith* v. *Aylesworth*, 40 Barb. 104.) Defendant was a guarantor, not a surety. The former is a secondary, whereas

the latter is a primary obligation. In the case of a guarantor his responsibility does not begin until the performance of some act, or the fulfillment of some promise on the part of the creditors. (9 Am. & Eng. Enc. of Law, 431; 18 Am. L. R. [N. S.] 751; 10 id. 431.) Defendant was a special guarantor of collection, not of payment. (*McMurray* v. *Noyes*, 72 N. Y. 523; *E. N. Bank* v. *Kaufman*, 93 id. 273.) In such a guaranty it is a condition precedent that the creditor shall diligently endeavor to collect the amount of the principal debtor by exhausting the ordinary legal remedies for that purpose, and a failure so to do works a discharge of the guarantor. (*Vanderbilt* v. *Schreyer*, 91 N. Y. 398; *Tiffany* v. *Willis*, 30 Hun, 266; Brandt on Suretyship, chap. 3; DeColyar on Guarantees, 190–197; *S. S. N. Bank* v. *Sloan*, 32 N. Y. S. R. 653.) The rights of the plaintiff under the bond in question are to be most strictly construed, and the liability of defendant limited to the exact extent named in the bond. (*Wright* v. *Johnson*, 8 Wend. 512, 516; *Kingsbury* v. *Westfall*, 61 N. Y. 360; *Creeghino* v. *Hammer*, 60 Cal. 235; *E. N. Bank* v. *Kaufman*, 93 N. Y. 281; *Birkhead* v. *Brown*, 5 Hill, 635; *Jones* v. *Ashford*, 79 N. C. 172; *Barnes* v. *Barrow*, 61 N. Y. 39; 93 id. 288; *McCluskey* v. *Cromwell*, 11 id. 598; *Rindge* v. *Judson*, 24 id. 64; *Schwartz* v. *Hyman*, 107 id. 565; *People* v. *Chalmers*, 60 id. 158.) Plaintiff failed to perform the exact conditions precedent, and therefore failed to bind defendant under his bond, in that it did not proceed with due diligence against the principal debtor. (Brandt on Suretyship, § 84, 86; *Markley* v. *Riggs*, 19 Johns. 69; *Eddy* v. *Stanton*, 21 Wend. 255; *Bd. Suprs.* v. *Otis*, 62 N. Y. 94; *Carr* v. *Sterling*, 114 id. 564; *Voorhist* v. *Atlas*, 29 Iowa, 49; *Kils* v. *Tifft*, 1 Cow. 98; *Mookley* v. *Johnson*, 19 Johns. 69; *McMurray* v. *Noyes*, 72 N. Y. 525; *Mosier* v. *Waful*, 56 Barb. 80; *Tolles* v. *Adee*, 91 N. Y. 572; *Mead* v. *Parker*, 111 id. 262.) Plaintiff failed to perform the exact conditions precedent, and therefore failed to bind defendant under his bond in that he voluntarily granted ninety-nine days more time to the principal debtors than they were by due process of

law entitled to. (*Miller* v. *Stewart*, 9 Wheat. 680; *People* v. *Backus*, 117 N. Y. 201.) Plaintiff failed to perform the exact conditions precedent, and therefore failed to bind defendant under his bond, in that it failed to perform the conditions precedent within the time limited in the bond. (*Craig* v. *Parkis*, 40 N. Y. 181; *Schmitz* v. *Langhaar*, 88 id. 506; *N. Ins. Co.* v. *Wright*, 76 id. 445; *Ralph* v. *Eldridge*, 34 N. Y. S. R. 191.) The fact that the principal debtors, Baker and Clark, were notoriously insolvent, did not relieve the plaintiff from the performance of its full duty with relation to the condition precedent. (*Craig* v. *Parkis*, 40 N. Y. 181; *N. Ins. Co.* v. *Wright*, 76 id. 445; *Toles* v. *Adee*, 91 id. 572.) The trial court erred in refusing to grant defendant's motion for a nonsuit at the close of plaintiff's case upon the grounds stated, and the General Term's decision reversing the judgment should be affirmed. (*Schmitz* v. *Langhaar*, 88 N. Y. 506; *N. Ins. Co.* v. *Wright*, 76 id. 488; *Craig* v. *Parkis*, 40 id. 181; *McMurray* v. *Noyes*, 72 id. 525; *Burt* v. *Homer*, 5 Barb. 501; *Tiffany* v. *Willis*, 30 Hun, 266, 268; *Mead* v. *Parker*, 111 N. Y. 262; *S. S. N. Bank* v. *Sloan*, 39 Hun, 772; *Schwartz* v. *Hyman*, 107 N. Y. 562.) If the question properly belonged to the jury the trial court erred in its charge to the injury of the defendant, and the reversal of judgment ordered by the General Term should be affirmed. (*Craig* v. *Parkis*, 40 N. Y. 181; *Newcomb* v. *Hall*, 90 id. 331; *Miller* v. *Stewart*, 9 Wheat. 680; *Cady* v. *Sheldon*, 38 Barb. 108; *People* v. *Nelson*, 13 Wend. 164; *Foster* v. *People*, 50 N. Y. 601.)

PECKHAM, J. This action was tried at the Onondaga Circuit before a jury. The bond upon which the suit was brought was executed by the defendant February 19, 1887. For some time prior to that date there had been a firm doing business at Oswego under the name of Austin & Co., and such firm had at that time been insolvent for some months. There was another firm doing business in the city of New York under the firm name of Baker & Clark, which firm, some months

prior to the above date, had also become insolvent, and had made an assignment to an assignee for the benefit of creditors. The firm of Austin & Co. had drawn drafts to the amount of over $10,000 upon the firm of Baker & Clark, which firm had duly accepted them, and the drafts had been discounted for the New York firm by the plaintiff. They had all matured and been dishonored prior to the execution of the bond in suit, and the plaintiff still held and owned them. On the 19th of February, 1887, the defendant executed the bond, and at the same time, and as part of the same transaction, the plaintiff, by its president, executed an agreement in writing and delivered it to the defendant.

The bond recited the drawing of the drafts, six in number, giving the names of their makers and acceptors, dates and amounts, and also stated that Baker & Clark had made an assignment for the benefit of their creditors before any of the drafts became due, and had preferred plaintiff in Class " B " of creditors for the amount then owing on the drafts, and being about $7,000, and that not one of the drafts had been paid. The bond then continued with this language:

" Now, therefore, the condition of this obligation is such that if the above bounden, George B. Sloan, *shall within one year from the date hereof pay the said Salt Springs National Bank of Syracuse any deficiency up to the said sum of $5,000 remaining unpaid to said bank on said drafts, and which the said The Salt Springs National Bank of Syracuse, after due diligence, shall fail to collect within the time above limited, from the said Baker & Clark, or either of them, or from the said Clarence F. Birdseye, as assignee aforesaid or otherwise,* then this obligation to become void, otherwise to remain in full force and virtue."

The agreement made on the part of the plaintiff recited that : " Whereas, The Salt Springs National Bank of Syracuse has this day received from George B. Sloan, of the city of Oswego, N. Y., his bond for the sum of $5,000, dated February 19th, 1887, upon the following terms and conditions and the terms and con-

ditions in said bond set out, to wit : *Said bank shall use due diligence to collect the six drafts named in said bond* from Clarence F. Birdseye, of New York city, as assignee of the Baker & Clark named in said bond, or from Baker & Clark, and out of the moneys obtained from said assignee," the bank was to apply the same to the payment of the drafts, and if any surplus moneys had been paid by Sloan they were to be returned him by the bank.

It also appeared in evidence that before the first of the drafts mentioned in the bond had become due the drawers had " got into financial difficulties and transferred their property." The first draft which became due was placed in the hands of the attorney for the plaintiff and judgment against the drawers was recovered, and supplementary proceedings had been instituted against them and some negotiations had been entered upon for the giving of security by the drawers. It was at this stage of the matter that the bond and agreement above referred to were executed.

The understanding between the parties seems to have been that the plaintiff was to take no further proceedings against Austin & Co., but should go on and see what could be collected from the New York people.

The amount of the drafts not having been collected from Baker & Clark or their assignee, within the year, the plaintiff commenced this action against defendant and sought to recover the $5,000 which it alleged he was liable for by reason of the execution of the bond. The defendant set up in his answer as a defense that the plaintiff had not performed the condition precedent to a liability on his part on the bond, and he alleged that it had failed to proceed with due diligence to collect the amount due on the drafts from Baker & Clark, or either of them, or from their assignee.

Upon the trial the sole substantial issue was whether the plaintiff had or had not used due diligence in its prosecution of the acceptors or their assignee. Evidence was given as to what it had done and the time and manner of doing it, and some evidence was given on the part of the defendant. The

learned trial judge submitted the question as to the due dili, gence of the plaintiff to the jury and a verdict for the plain, tiff was rendered by it.

The General Term has held that the evidence in the case was undisputed and that it raised a question of law only, and upon that question it held that the plaintiff had not prosecuted its attempt to collect with due diligence and, therefore, was not entitled to recover and it reversed the judgment and granted a new trial and from the order granting a new trial the plaintiff has appealed here.

The general rule in regard to one who becomes the guarantor of the collection of a demand is that in so doing he undertakes that the claim is collectible by due course of law, and the guarantor only promises to pay when it is ascertained that it cannot be collected by suit prosecuted to judgment and execution against the principal and the endeavor to so collect is a condition precedent to a right of action against the guarantor. And the fact of insolvency is no excuse for the failure to prosecute. (*Craig* v. *Parkis*, 40 N. Y. 181 ; *Northern Ins. Co.* v. *Wright*, 76 id. 445.)

The judgment must have been recovered and the execution issued thereon must have been returned unsatisfied in whole or in part before any liability is fastened upon the guarantor. And this judgment must have been recovered without unnecessary delay.

The guaranty in question is peculiar in its language. At the end of the year the guarantor promised to pay any deficiency up to the amount of $5,000 remaining unpaid on the drafts after due diligence had been exercised by the bank to collect their amount within the time limited. It is plain that due diligence might be exercised in such case during that time and yet no judgment have been recovered, and, of course, no execution issued or returned unsatisfied. If it had been thus exercised the liability of the guarantor would attach without the recovery of such judgment. In this respect there is a distinction between the guaranty contained in this bond and that of a general guaranty of collection.

SICKELS — VOL. XC.    48

There is the further difference that the guarantor promises to pay the deficiency up to the stated amount which the plaintiff fails to collect within the year (after due diligence) from Baker & Clark, or either of them, *or from their assignee.* It was understood that Baker & Clark had made an assignment for the benefit of their creditors, and if the assignment were not fraudulent it was, of course, known that the property of Baker & Clark had become the property of the assignee as trustee and for the purpose only of executing the provisions of that instrument. In that case the only recourse the plaintiff could have against the assignee would be to see to it that he faithfully and expeditiously carried out the directions contained in the assignment. This the assignee might and presumptively would do without any resort to compulsory process on the part of the plaintiff or any other party.

The due diligence that was required of the plaintiff did not therefore render it necessary that legal proceedings should at once be commenced against the assignee. If the latter were proceeding with proper celerity in the execution of his trust, and assuming the validity of the assignment, there was nothing for the plaintiff to do of a legal nature as against him. If, however, the assignment were invalid and had been made for the purpose of hindering and delaying creditors, then an action against the assignee as well as against the assignors for the purpose of setting aside the assignment might be necessary. In order to determine the question of the validity or the invalidity of the assignment, knowledge of the facts which caused its execution and some evidence of the motives accompanying it would obviously be necessary.

If plaintiff entered upon and prosecuted the examination of this question with due diligence and discovered there were no grounds upon which to base an attack upon the good faith and validity of the assignment, and if the assignee duly performed his duties under the assignment while the year lasted, it would seem that under such facts it could not be determined as matter of law that the plaintiff had not done all that could be expected of it, or that due diligence required

an action against the assignee to fulfill the conditions of the bond in question. The duty to use due diligence in attempting to collect from Baker & Clark was also incumbent upon the plaintiff. It was not an alternative duty which existed only in case the assignee were not proceeded against. The condition of the bond called, as I think, for the exercise of due diligence as against both, but the fact (if it were a fact) that examinations and investigations regarding the validity of the assignment itself were in progress, might properly be taken into consideration upon the question whether due diligence was being used in reference to Baker & Clark.

Again, it might, under some circumstances, be quite an important question to determine as to the character of the legal proceedings to be taken against the principals. Should such proceedings be the simple action upon the drafts as upon instruments for the payment of money only, or should the action be one in tort as arising out of a fraudulent creation of the debt and thus give to the plaintiff the right to arrest on mesne process and to take the person upon the judgment to be obtained ? The answer would depend upon the facts to be learned, and if there were suspicious circumstances which might fairly justify the resort to a more prolonged investigation made in good faith and for the honest purpose of obtaining information upon which to act, it could not be said as a matter of law that in such case and pending the investigation due diligence was not exercised in attempting to collect the amount of the drafts by action.

With this review of the situation, and of the meaning of the bond in suit, it is proper in a very general way to advert to the evidence given on the trial on the part of plaintiff as to what the plaintiff actually did in the way of using due diligence to collect the amount of these drafts.

Almost immediately after the execution of the bond the supplementary proceedings against Austin & Co., which had been commenced in Oswego, were resumed for the purpose of obtaining from them, and in a manner which would not appear to be voluntary, certain letters in their possession which

it was thought might be of importance upon the proceedings which might be commenced against Baker & Clark in New York, and under the cover of these proceedings the attorney for the plaintiff obtained the letters. It is to be gathered there was some importance attached to them relative to the question of the liability of Baker & Clark as for a fraudulent debt in obtaining the discount of the drafts by the plaintiff. Then the attorney for the plaintiff went to New York and entered upon what he claimed was a most thorough investigation of all the facts attending the execution of the assignment for the purpose of discovering, if possible, some means of attacking its *bona fides.* He went to different creditors, put himself in communication with their attorneys to ascertain if they knew of any facts which would aid in such an attack, and in brief he did, as he claims, everything that one could be expected to do who, acting in good faith, was endeavoring to find out if any facts existed which would justify an attack upon the assignment, or an action of tort against the accceptors of the drafts. Finally he became convinced there was no chance of success in such an endeavor. He also endeavored to find if there were any property of the firm which had not been turned over to the assignee, but did not succeed in find ing any. All these investigations took some time before it was finally determined that the assignment could not be successfully attacked. In the meantime, and within a week from the signing of the bond, the attorney for plaintiff commenced to investigate the whereabouts of Baker, one of the firm of Baker & Clark, and the evidence is quite minute as to what he did towards finding Baker for the purpose of serving process upon him. Mr. Baker was in Brooklyn but a very short time after the execution of the bond, and it was claimed he was endeavoring to avoid the service of process. He soon left the state and did not return until the middle of August. The plaintiff did not succeed in serving him before he left the state, and the defendant charges that no fair effort was made, and that from plaintiff's own showing service could have been made on Baker frequently while he was within the state.

No service of process was made on Clark, the other member of the firm, until after Baker's return and some time in September, although he could have been served at any time during the period. The plaintiff says the reason for the omission was that Clark could be served any time, and if served during Baker's absence it was feared the latter might not return, and it was not thought wise to sue Clark separately.

Negotiations were also pending by which it was sought to obtain some security from a brother of Baker, and finally the brother, who was a preferred creditor of Baker & Clark of the first class, assigned the balance due him under the assignment as security for the payment of the drafts, or some portion thereof. It was feared these negotiations would be broken off if suit were commenced against Clark while Baker was away, and that in such case Baker would remain away. The defendant charges these negotiations with Baker were only for the payment of the amount over the $5,000 claimed from defendant, and that there was no good faith in the matter of these negotiations, or in the excuse for the alleged failure to press with due diligence the case against Baker & Clark.

Process was finally served on Baker August 27, 1887, he having returned to the state on the fifteenth of that month, and on Clark on the seventh of September following.

They appeared by attorney, and under a threat on the part of the latter to put in an answer unless time for an investigation into the matter was given, the attorney for plaintiff gave various extensions of time to answer, aggregating some ninety odd days, when a default occurred and judgment was entered January 4, 1888, and a transcript filed in New York county January 5, 1888. After the date of the service of the process on Baker & Clark, the first Circuit held in Onondaga was appointed for the fourth Monday, the 26th of September, 1887. An answer would have prevented the case going on the calendar at that Circuit. The next Circuit was held in that county January 9, 1888. Before that date judgment had been obtained. It was claimed by the plaintiff that by the course pursued, which it is urged was guided to some extent by the

threat of Baker & Clark's attorney to put in an answer and defend at any rate, if time were not given, the extensions of time actually given operated to plaintiff's advantage by finally enabling it to obtain judgment at an earlier day than it would have been enabled to do if the extensions had been refused and the defendants in that action driven to the serving of an answer. The defendant here claims the extensions were wholly voluntary, totally unnecessary, not given under a *bona fide* effort to prosecute with due diligence, and hence they constituted an inexcusable delay in prosecuting the action and formed a defense to this action on the bond. After the entry of the judgment, and the filing of a transcript thereof in New York county, there was a delay of over a month in the issuing of an execution thereon. The attorney for the plaintiff swore he intended that an execution to the sheriff of New York should accompany the transcript, and he supposed that it did, but in fact it did not, and in fact it was not issued for more than a month. The attorney says he can only explain the omission by a mistake or his absence from home during the time. No claim is made that the defendants Baker & Clark had any property which might have been reached by an execution if one had been issued at once upon the entry of the judgment, and there is no fact found in the evidence which would lend any color to the suspicion that the assignment was not a *bona fide* one which transferred all the property of Baker & Clark to the assignee in trust. It also appears that the plaintiff was in the second class of preferred creditors in that assignment, and that there was not enough property to pay in full the creditors in the first class, and it is not charged that the assignee was guilty of any want of diligence in any matter pertaining to his trust. This in substance is the case as it appeared for the plaintiff upon the trial, and it is this case which the learned General Term holds presents a question of law.

It is undoubtedly true that in many, perhaps in most cases, the question of what constitutes due diligence, where it arises upon undisputed evidence, is one of law only. What shall constitute a reasonable time in which to do an act is also gen-

erally held to be a question of law. So is the question of
what constitutes probable cause in an action for a malicious
prosecution. So also is the question of negligence in certain
contingencies. In none of these instances is there, however,
an unyielding rule that upon undisputed evidence the question
is universally one of law.

It depends frequently upon the character of the evidence
itself, whether it is of such a nature that but one inference
could be drawn from it by reasonable and intelligent men.

In such a case as this for instance, the due diligence of the
plaintiff is not a fact that could be testified to directly and in
terms.

A witness for the plaintiff would not be permitted to swear
that due diligence was observed in the prosecution of Baker
& Clark. In order to prove due diligence all the material
existing facts surrounding the case should be shown and a
statement in detail of all the things actually done in the way
of prosecuting the matter would have to be proven, and then
from all these things thus proved the resultant fact of due dili-
gence, or its absence, would have to be found either by the
court or a jury. If this resultant fact to be found from all the
evidence in the case, uncontradicted though that evidence may
be, were of so doubtful a nature that different and equally
intelligent and unbiased men might fairly differ in opinion as
to its character, then the jury, under proper instructions from
the court, should examine the evidence and find the fact which
is properly to be inferred therefrom.

It was at one time thought that where the evidence was
uncontradicted or undisputed, the question of negligence was
one of law only, but that claim has long since been abandoned.
There may be cases, of course, where the evidence being
undisputed a clear question of law only arises and the court
thereupon decides that no negligence is shown, or the reverse.
If the uncontradicted evidence show a case where different
inferences might be drawn from undisputed facts as to the
existence or nonexistence of negligence, it has been the law
for many years that such inferences are to be drawn by the

jury under proper instructions from the court. (*Hart* v.. *Hudson R. Bridge Co.*, 80 N. Y. 622.)

The same may be said of the want of probable cause in actions for malicious prosecution. Generally it is a question of law, yet frequently upon undisputed evidence it is made a mixed question of law and ·fact. The jury draws the inferences, if they might fairly be the subject of difference in different minds of equal intelligence, and the court gives the proper instructions to the jury. This principle was thus. asserted in the case of *Mead* v. *Parker* (111 N. Y. 259), although perhaps it was not directly and necessarily involved in the point actually there decided. See also *Sullivan* v. *N. Y. & Rosendale Cement Co.*, 119 N. Y. 348 ; *Reilly* v. *Dodge*, 131 id. 153, 159.) The principle is, however, correct.

If the undisputed evidence show a state of facts from which but one inference could properly and justly be drawn by any fair and intelligent man, then the question of due diligence is one for the court alone.

Upon the evidence already detailed in this case we are clearly of the opinion that the question presented was one for the jury under proper instructions from the court. The court charged that the plaintiff was bound to use due diligence up· to the time it commenced this action, although beyond the· period of the year specified in the bond. The jury was charged with the duty of considering the question whether upon all the evidence in the case the plaintiff used due diligence in prosecuting Baker & Clark, and also against the assigned estate. The court also said to the jury that if the extensions of time to answer were given voluntarily, of which they were to judge upon the evidence, then more time was given to the defendants than due diligence entitled them to.

The defendant here makes several claims as proved by this. evidence.

He urges first that the failure to serve Baker with process before he left the state in March or April, 1887, was a failure to exercise due diligence and that the efforts to serve him as. stated on the part of the plaintiff, were not made in good

faith and were not under all the circumstances sufficiently persistent to show due diligence. This question of good faith was peculiarly proper upon the evidence for a jury to decide. It is also claimed the excuse for the failure to serve Clark until after Baker had been served was unjustifiable. The evidence upon that subject, though not disputed, leaves a question as to the *bona fides* of the excuse actually given, whether the fact stated was really and in good faith the motive and cause of plaintiff's conduct. This also upon the evidence was a question for the jury. The negotiations for security from Baker's brother are also attacked as not having been made in good faith and for the purpose of collecting as much as possible upon these drafts, and consequently it is urged that they furnish no excuse or justification for failing to serve Clark even though Baker was out of the state. The excuse offered for this failure has been stated above, and here again we think it was a fair question for the jury to say whether the excuse was a *bona fide* one and had really caused the delay spoken of. Other questions of good faith on the part of the plaintiff arose in the progress of the case. Enough has been said to show that the question whether the plaintiff acted with due diligence depended upon the construction to be given quite a number of different acts of the plaintiff and upon the motives which accompanied them; whether those acts were in reality performed in good faith and for the purpose of honestly fulfilling the duty owed by plaintiff to defendant, or were simply actions intended as a mere cover or blind to excuse the failure to prosecute, while at the same time affording ground for the pretense that the plaintiff had done all it could to collect the drafts from the assignee of the estate or from the firm of Baker & Clark. These matters were peculiarly of a nature for a jury to decide upon and it would appear that the question was submitted to that tribunal with great fairness by the learned trial judge and upon proper instructions as to the law governing the case.

One other objection to this recovery is made by the defendant. The plaintiff failed to prosecute Baker & Clark by action

upon one of the six drafts mentioned in the bond. It commenced its action and obtained its judgment upon the remaining five only. The defendant claims the prosecution should have been upon all of them and that the failure constitutes a defense to the bond.

The draft upon which no suit was brought was put in evidence and the plaintiff maintained it was paid, although it was not so marked. The court charged it might be considered a due prosecution of the draft when the plaintiff acknowledged that it got the money on it and made no demand upon the defendant therefor.

The plaintiff in truth made no claim for or on account of that draft and we think the trial court committed no error in the disposition of the case with regard to it.

We have looked through the case with respect to the exceptions taken upon the decisions of the court as to the admission or rejection of evidence and we are unable to see that any error to the prejudice of the defendant occurred in their disposition.

Upon the whole case we think the court properly left the question of due diligence to the jury.

The order of the General Term granting a new trial should therefore be reversed and the judgment entered upon the verdict of the jury should be affirmed, with costs.

All concur, except ANDREWS, J., not voting.

Order reversed and judgment affirmed.