(18 App. Div. 438.)

LANE et al. v. GORDON et al.

(Supreme Court; Appellate Division, Fourth Department.    June 12, 1897.)

1. EJECTMENT—BURDEN OF PROOF.
    In an action of ejectment, when the defendant has proved a lease to him, providing that it shall be null and void unless within a certain time he commences and prosecutes with due diligence the boring of an oil well, the burden is upon the plaintiff to show a failure on defendant's part to comply with such condition.
2. OIL LEASE—PERFORMANCE OF CONDITIONS.
    In an action turning upon a provision in a lease of oil land that it shall be null and void unless the lessee, within a certain time, commences and

prosecutes with due diligence the boring of an oil well, where there is evidence that within the time limited no well was actually in process of drilling, but there is also evidence that within such time the defendants commenced the construction of necessary machinery on the premises, and were engaged in seeking for contractors to do the work, it is a question for the jury whether they exercised due diligence in constructing the well.

Appeal from trial term, Allegany county.

Application by Charles S. Lane and others against Harry O. Gordon and Charles B. Sofield. Verdict for defendants. From the judgment, plaintiff appeals. Affirmed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

S. M. Norton and A. M. Elliott, for appellants.
Charles H. Brown, for respondents.

HARDIN, P. J. Plaintiffs' complaint alleged that George W. Burdick was the owner in fee of the premises described in the complaint, "subject only to the rights of the plaintiffs therein under and by virtue of a contract" entered into on the 20th of January, 1896, with the plaintiffs Gibson and C. S. Lane, which contract is set out in the complaint. In that agreement the following language was used, to wit: The party of the first part "does hereby grant and convey unto the parties of the second part, their heirs and assigns, all the right, title, and interest of the said party of the first part of, in, and to all the rock, petroleum, oil, gas, and other minerals and volatile substances of, in, or under the following described premises." After those words a description of the property is given, and then follows the following language: "Also all of his right of entry on said premises for the purpose of opening, mining, and removing the oil and gas therefrom, with the right to erect all necessary buildings and tanks on said premises for the purpose of procuring and storing such oil and gas." It is alleged that for a good and valuable consideration Gibson and C. S. Lane "sold, transferred, and assigned unto" Berry and William T. Lane "each an undivided one-fourth interest in and to said above-mentioned agreement and contract, and to the property rights and premises therein described." The plaintiffs further allege that the defendants Gordon and Sofield "have heretofore, and since the making, executing, and delivery of the said hereinbefore described agreement and contract, entered upon the said premises, erected a derrick for drilling for oil thereon, and are proceeding to drill a well thereon for oil and gas, with intent to appropriate to their own use the oil and gas in, upon, and under said premises, in disregard of the rights of the plaintiffs, and with full notice and knowledge of the rights and interests of these plaintiffs in and to said premises, oil, and gas, and without any legal right, title, or interest therein." It is further alleged that the defendants refused to quit and vacate the said premises, and refused to cease their operations thereon for oil or gas, and refused to surrender up to the plaintiffs the possession of said premises, though requested so to do. The complaint further alleges that the defendants "have excluded and prohibited, and still exclude, prohibit, and prevent, these plaintiffs from entering upon and taking posses-

sion of said premises, and from entering upon and operating the same for the purpose set out in said above-described agreement and contract, and prevent and exclude these plaintiffs from the enjoyment of any of the grants, privileges, and benefits secured to them under and by virtue of said contract and agreement, to the great damage of these plaintiffs." The answer of the defendants denies that on the 20th of January, 1896, Burdick was the owner in fee of the land, "subject only to the rights of the plaintiffs therein under and by virtue of the contract set out in the said complaint." The defendants affirmatively allege in their answer "that at the time of the commencement of this action, and for many days previous thereto, they were the owners of all the oil and gas in and upon the premises described in the said complaint, and were entitled to, and were in possession of, the lands and premises described in said complaint, and were rightfully in such possession, and were proceeding to drill an oil well thereon for the purpose of obtaining oil and gas from said premises, all of which they had a right to do; and that the plaintiffs, and each of them, had full knowledge of the rights of the defendants in and to the said premises on the 20th day of January, 1896, and for many days previous thereto." The answer of the defendants contains some other denials of the allegations in the complaint, but the reference to folios of the original complaint is unfortunately found in the denials, and it is, therefore, difficult to discover just what allegations are denied specifically. The answer contains some admissions, and they are followed by a denial of all the plaintiffs' allegations not expressly admitted or denied.

Some question was made at the trial as to the insufficiency of the plaintiffs' complaint, but the trial court ruled in favor of the plaintiffs, and the defendants are not in a situation to review that ruling. Upon the trial the plaintiffs put in evidence a deed of the premises in question to Burdick, made in 1887, and proved by Burdick that he went into possession under it, and that he executed the instrument mentioned in the plaintiffs' complaint. The case then states that the paper set up in the defendants' answer was shown to the witness, and the witness continued, "I signed that, and delivered it to the party of the second part." The paper was then marked for identification as "Exhibit No. 1." Burdick, as a witness, further testified: "I don't remember whether or not I had this lease, or a duplicate thereof, with me on the 19th day of January, at the store of Lane, when plaintiffs' Exhibit B [the instrument set out in the complaint] was signed; but I think I did, and think it was a subject of our conversation. Plaintiffs knew of this lease, Exhibit 1, when I executed Exhibit B to them, and they took this lease with knowledge of defendants' Exhibit 1." Thereupon the defendants offered in evidence Exhibit 1, which had been recorded in the clerk's office of Allegany county on the 23d of January, 1896. The plaintiffs stated several objections to the reception of it in evidence, and they were overruled, and the plaintiffs took an exception. We think, under the pleadings, and the course the trial had taken, no error was committed in receiving it in evidence, and that the exception is unavailing to the plaintiffs.

The instrument given to the defendants was executed on the 24th

day of December, 1895, and stated that Burdick had, in consideration of one dollar and certain stipulations contained in the instrument, "granted, leased, and demised, and do hereby lease, grant, and demise, unto the said second party, their heirs and assigns, all that tract or parcel of land situate in the town of Wirt, county of Allegany," with appropriate language describing the lands in question. It also contained the following words:

"With the exclusive right to dig, bore, and mine for all oil or gas found in and upon the aforesaid premises; to have and to hold the same for the term of twelve years from this date, or as long thereafter as oil is found in paying quantities. Also all the right of way to enter upon said premises for the purpose of operating, mining, or removing said oil or gases therefrom, and full power to erect all necessary buildings and tanks upon said premises for the purpose of procuring or storing such oil or gases, with the full right to the said second party. of appropriating to their own use all the oil or gases found upon said premises. for said term."

The instrument contained the following important language:

"This lease shall be null and void and at an end unless second party shall within five days from this date commence and prosecute with due diligence, unavoidable accidents excepted, the sinking or boring of one well to a depth of Wirt Center oil sand, unless oil in paying quantities is sooner found; and said well shall be fully completed within ninety days from this date, unavoidable accidents excepted; and each ninety days thereafter there shall be drilled to completion one new well, unavoidable accidents excepted, until there shall be a total of one well to each ten acres of land. * * * If the parties of the second part shall fail to keep and perform the covenants and agreements by them to be kept and performed, then this lease shall be null and void, and surrendered to the party of the first part."

After the evidence which we have already mentioned was received, the defendants rested, and thereupon the plaintiffs asked for a direction of a verdict on the ground:

"That the defendants have established no defense to the plaintiffs' complaint. The defendants' lease provides that it shall be null and void unless they comply with certain conditions. The first condition is that they shall, within five days from date, commence and prosecute with due diligence the sinking and boring of a well, etc., and the various other conditions which are contained in this lease, and they have shown no compliance with any of those conditions."

The motion was denied, and the plaintiffs took an exception, which, we think, does not present any error. As the case then stood, no evidence had been given of the failure of the defendants to comply with the stipulations and requirements of the instrument given to them on the 24th of December, 1895. Thereupon the plaintiffs assumed the burden of establishing that there had been a failure on the part of the defendants to comply with the requirements of the instrument executed to them. The witness Burdick testified that he remembered the execution of the lease, and that the parties were at Friendship when the same was executed, and he adds:

"I next saw them at my house, the 26th, and next about a week or ten days. after, and again a short time after that. * * * At the time of giving Exhibit 1, there were no wells in process of drilling or in operation upon the premises. The first they did was, on the 26th of December some trenches were dug for mud sills for a derrick and engine. Those are the bottom timbers that go under the derrick and engine house. And those trenches are simply for the purpose of laying those timbers."

In the course of the witness' cross-examination he said:

"I do not mean to say that the defendants may not have been getting their lumber for the work or hiring their contractors, or attempting to find where they could get lumber. The derrick is about twenty feet square and seventy-five feet high, and probably contains eight or ten thousand feet. The rig timbers are probably between twenty and thirty, the derrick sill about twenty, feet long, and main sill from eighteen to twenty inches square and twenty to twenty-five feet long; the other twenty or thirty timbers smaller. I do not know what they were doing about cutting timbers and getting ready, only that they were not operating in any manner on the premises.  *  *  *  By my testimony that nothing was done by the defendants I do not mean that the defendants were doing nothing in preparing their material and securing their help to drill this well. I simply mean that they did nothing upon the premises, except to make this grade.  *  *  *  The purpose and object of a derrick is for drilling to hang the tools in, which are heavy implements, weighing upwards of a ton; and during the progress of drilling the entire weight is suspended from the top of the derrick. So as to make it strong and able to sustain this great weight, they should be built by an expert rig builder; put together so as to stand heavy work; but not necessarily out of good timber.  *  *  *  Rig timbers, derrick, and oil well tools are all necessary for the drilling of a well. In this well they struck sand at 1,087 feet, and drilled a 5⅝ inch hole, which has to be cased about four hundred feet to shut off fresh water."

The plaintiffs' witness Dougherty testified:

"The making of a grade for a derrick is necessary for the operations for property for oil. The commencement of operations is where you commence on the ground to operate.  *  *  *  The drilling tools we use in that locality will probably weigh twenty-two hundred or twenty-three hundred pounds, and the cable from seventeen hundred to twenty-two hundred. The derrick has to be built strong to sustain the weight. It takes a twenty horse power boiler, weighing about sixty-five hundred, and an engine weighing about twenty-five to thirty hundred."

After some further evidence was given in behalf of the plaintiffs, which they claimed tended to indicate that the defendants had not, within five days of the date of the lease, commenced and prosecuted with due diligence "the sinking and boring of one well to a depth of Wirt Center oil sand," the case was again rested, and the defendants gave evidence tending to substantiate the position taken by them at the trial, that they had fully complied with the terms and requirements of the lease executed by them, and that there had been, therefore, no forfeiture of their rights under it. Bearing upon that important question, a large volume of evidence is presented, which it is not necessary to refer to in detail. At the close of the whole evidence the plaintiffs asked the court to direct a verdict in their favor on the ground "that there is no proof showing due diligence on the part of the defendants under the conditions of this lease, and no evidence upon which such finding could be made." Thereupon the court held that it "should be left to the jury to say whether the defendants have made proof by their evidence of the facts that they conducted their operations with due diligence, and denied the motion to direct a verdict for the plaintiffs." To this ruling the plaintiffs took an exception.

After a careful perusal of all the evidence, we are of the opinion that the ruling was correct, and that the evidence fairly presented a question of fact which it was proper to submit to the jury. Work which was necessary to be performed in the sinking or boring of one well was

literally commenced within the period of five days from the date of the execution of the lease. The defendants were entitled to reasonable time in which to obtain the necessary materials for the rig—for the erection of the derrick—for the further preparations essential to carry forward the work of sinking or boring. Flemming Oil & Gas Co. v. South Penn Oil 'Co., 37 W. Va. 645, 17 S. E. 203; Bartley v. Phillips, 165 Pa. St. 325, 30 Atl. 842. Whether the work was prosecuted with due diligence or not, we think, under the circumstances disclosed by the evidence, was a question of fact for the jury to determine upon the whole volume of evidence before them.

In Bank v. Sloan, 135 N. Y. 383, 32 N. E. 235, in considering whether diligence had been exercised or not, and the rules of law applicable thereto upon evidence, it was said:

"It depends frequently upon the character of the evidence itself whether it is of such a nature that but one inference could be drawn from it by reasonable and intelligent men. In such a case as this, for instance, the due diligence of the plaintiff is not a fact that could be testified to directly and in terms. * * * If the uncontradicted evidence shows a case where different inferences might be drawn from undisputed facts as to the existence or nonexistence of negligence, it has been the law for many years that such inferences are to be drawn by the jury under proper instructions from the court."

Having carefully examined all the evidence, we are of the opinion that the conclusion reached by the jury is quite satisfactory. By the terms of the lease the defendants were not required to have a completed well in less than 90 days, and the parties, even in fixing that limitation, were careful to guard against "unavoidable accidents," and we think the court committed no error in refusing to rule as matter of law that there had been a failure to comply with the terms of the agreement on the part of the defendants, and that the motion made that a verdict be directed in behalf of the plaintiffs was properly denied. The defendants were not in the attitude of disputing the title of their landlord. On the contrary, they assumed that he had the title to the property at the time he executed the lease to them, and that they, in virtue of its terms, were entitled to enjoy the benefits provided for in its stipulations, and to assert that in virtue of such stipulations they were entitled to prosecute the work which they had undertaken, and that, not having forfeited their rights under the instrument, the plaintiffs derived no right, title, or interest in or to the premises until after the expiration of their lease; and under the denials made in the answer we are of the opinion that the defendants were entitled to give the evidence tending to show the fulfillment on their part of the requirements of the lease, and that no forfeiture had taken place. Besides, the answer of the defendants does allege that the defendants were the owners of all the oil and gas in and upon the premises described in the said complaint, and were entitled to and were in possession of the lands and premises described in said complaint, and were rightfully in such possession, and were proceeding to drill an oil well thereon for the purpose of obtaining oil and gas from said premises. We think the case of House v. Howell (Sup.) 6 N. Y. Supp. 799, does not aid the contention of the appellants.

2. When the witness Gordon was upon the stand he testified that on the 26th of December he went onto the Burdick farm, and saw Bur-

dick, and he then adds, "I told Randolph to get the timbers out right away, and he said he would." Thereupon the following question was propounded to him: "Q. Did you then and there intend to use those timbers on the Burdick farm?" A general objection was interposed by the plaintiffs, and overruled, and an exception was taken. The answer was, "I did; yes, sir." And then the witness continued: "The timbers were fully gotten out on the 8th day of January; that is, the trees were cut down, and timbers hewn and squared the proper length. I was up there again the 3d, 4th, or 5th of January, and saw the rig builder, and told him he could build the rig, provided he would do it as cheap as anybody else." Some question had arisen as to whether the timbers were designed for another farm or not, and, inasmuch as the testimony discloses very fully the circumstances relating to the timbers that were to be gotten out by Randolph, we think the evidence received in answer to the question objected to was not prejudicial to the plaintiffs. If the answer to the question which was objected to had been left out of the case, it is very clear the verdict would not have been for the plaintiffs. Subsequently the witness was asked: "Q. During this time, did you in good faith intend to drill this well upon the Burdick farm?" This was objected to generally by the plaintiffs, and the objection was overruled. The time mentioned in the question was in January, and was before the witness knew that the plaintiffs had a lease, or that there was any trouble about it, and, in connection with the testimony given, the witness stated in detail the facts relating to his acts and doings in respect to commencing and carrying forward the sinking and boring of the well under the lease.

It is claimed in behalf of the appellants that the court committed an error in charging the jury "that the fact that the defendants succeeded in making a contract to drill this well at 50 cents per foot, and thereby saving upwards of $110, is of itself some evidence of such diligence as is required by the lease." When the request to so charge was yielded to, there had been a full and careful presentment of the pivotal questions of fact in the case to the jury. Besides, it appeared that the drilling was to be of a well about 1,087 feet, and that several negotiations had been had with parties with a view of having a contract made for the work, and that in several instances the price had been named at 60 cents, and in one case at 56 cents, and that subsequently a contract was made to have the work done for 50 cents, a foot; and it must be supposed that when the court yielded to the request he had in mind the circumstances attending the negotiations that had been developed. We think the exception presents no prejudicial error. We think the verdict should be sustained. No motion for a new trial on the minutes was made.

Judgment affirmed, with costs. All concur.