(67 App. Div. 58.)

THOMSON v. SEAMAN et al.

(Supreme Court, Appellate Division, First Department. December 13, 1901.)

1. PERSONAL INJURIES—TAKING CASE FROM JURY.

In an action for personal injuries, an instruction that "if the story of the defendants' witnesses be true,—that the accident happened as they say it did, and not as the plaintiff's witnesses say it did,—your verdict must be for the defendants," can only be sustained in case the defendants' testimony and the other evidence in the case not in conflict there-

with establish, as matter of law, a want of negligence in the defendants, or contributory negligence in the plaintiff.

2. SAME—STREET CROSSING—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE.

    In an action for personal injuries sustained by a 13 year old boy while crossing a street, through the negligence of a coupé driver in the employ of defendants, the evidence examined, and *held* that the questions of negligence and contributory negligence were for the jury.

Appeal from trial term, New York county.

Action by David Mitchell Thomson, Jr., an infant, by David Mitchell Thomson, his guardian, against Egbert B. Seaman and another. From a judgment for defendants, and from an order denying a new trial, plaintiff appeals. Reversed.

Argued before HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Herbert C. Smyth, for appellant.

Frederick Hulse, for respondents.

LAUGHLIN, J. This is an action for personal injuries alleged to have been sustained by David Mitchell Thomson, an infant who was 13 years of age, through the negligence of a coupé driver in the employ of the defendants. The accident occurred shortly before 1 o'clock on the 11th day of May, 1900. The boy resides on Sixty-Ninth street, and was attending the school at Seventy-Seventh street and Amsterdam avenue. On returning from his home to the school during the noon recess, he crossed Seventy-Second street on the easterly side of Amsterdam avenue. The defendants' team and coupé were approaching Amsterdam avenue from the east; being driven along the northerly side of Seventy-Second street, but near the middle of the street. They met on the crossing, and the boy was struck, thrown to the ground, and injured either by the nigh horse, or the left-hand or southerly splinter bar. The boy testified that when he left the southerly curb of Seventy-Second street he saw the coupé coming about halfway down the block to the east, and after he had proceeded about 12 or 15 feet into the carriageway the left front leg of the nigh horse hit him on the right side and knocked him over, and the left-hand or southerly wheel passed over his leg. Other evidence was given in behalf of the plaintiff corroborating the boy, and tending to show that the coupé was going at a fast trot,—very rapidly; that the entire northerly side of the street was free and unobstructed, so that the driver could have readily turned out to avoid the accident; and that at about this time a pony cart, with a Shetland pony attached, which was coming easterly on Seventy-Second street from Riverside Drive, was crossing Amsterdam avenue towards or to the south of the boy.

In the charge the court, after briefly drawing the attention of the jury to the evidence on the part of the plaintiff, said:

"And you will compare that evidence with the evidence of the defendants' witnesses, whose story, as I recall it, is mainly contradictory of the story of the plaintiff. And, if the story of the defendants' witnesses be true,—that the accident happened as they say it did, and not as the plaintiff's witnesses say it did, your verdict must be for the defendants."

To this charge the plaintiff took two exceptions,—one, to so much thereof as stated that the story of defendants' witnesses was mainly contradictory of plaintiff's; and the other to so much thereof as directed the jury to render a verdict for the defendants if they believed the story of the defendants' witnesses to be true. This charge can only be sustained if the testimony of the witnesses called by the defendants, if believed by the jury, and the other evidence in the case not in conflict therewith, established, as matter of law, either that the boy was guilty of negligence which contributed to the injury, or that the defendants' driver was free from negligence contributing thereto. Kliener v. Railroad Co., 162 N. Y. 193, 198, 56 N. E. 497. It therefore becomes necessary to consider the testimony of the witnesses called by the defendants.

The driver of the coupé testified, in substance, that he was driving about the middle (within a foot or two or a little north of the middle) of Seventy-Second street; that within 155 feet of the corner of Amsterdam avenue he saw the pony wagon coming from the west, and saw the boy step from the curb on the south side of the street; that the boy walked about 5 or 6 paces into the street, with his attention attracted to the pony cart, which was crossing Amsterdam avenue and the street railway tracks therein; that "as he stepped from the curb he stepped sideways off the crossing, and backed towards me as I was driving through, and in backing up he came within two feet of the carriage, and I said, 'Look out, there,' and with that he made a jump sideways, and the splinter bar caught him in the hip and knocked him down"; that he had the horses half pulled up when the boy was coming towards the carriage, and swerved them to the right to avoid a collision, and pulled them up so suddenly that they came to a stop the moment the boy was struck; that the horses were going quite slow—just a little faster than a walk—at the time of the accident; that the splinter bar projected about 6 inches beyond the wheel. On cross-examination he said that he saw the boy walk out about 5 paces, or 15 or 16 feet, from the curb, and stop with his face towards the witness; that the boy passed in front of and was facing the pony cart, which was then crossing Amsterdam avenue; that the coupé was about 155 feet, or 4 or 5 houses, away from the boy when he stepped from the curb, and about 25 or 30 feet from him when he turned around to look at the pony cart; that he knew the boy wanted to cross the street, but supposed the boy's intention was to stop until the coupé passed, but did not see him stand to let it pass by; that "I did not see him stop at all. I did not see him stop when he turned around. He walked backwards from the time I was twenty-five or thirty feet away. I might have been more than that. Perhaps about that distance, maybe not so much. As he was backing across the street at this distance he could not see my wagon. I had a plain view of him. * * * At that time there was nothing between me and him"; that the first he said to the boy was, "Look out, there;" and at that time the boy was about a foot and a half from the wagon, and "made a sudden jump towards the carriage, sideways. When I holloaed he jumped sideways, like this, to the horse, and that is

the time I changed the direction of the horses so that the splinter bar would not touch him. I had not changed the direction of my horses up to the time the boy jumped. I had perhaps twenty-feet space on my right-hand side, between me and the curb"; that "I was not really going as fast as a trot, so that I was really walking; about that; just really walking; just the horses walking, it may be a little trot occasionally; just a step once in a while; it was between walking and a trot"; that the horses were very well trained animals, and that he could bring them to a stop within three feet; that he was going in an absolutely straight line up Seventy-Second street, and could have turned his horses off the line, one way or the other, in a second.

Mrs. Baldwin, who occupied the right-hand side of the seat in the coupé, did not see the accident, but she testified that the horses were only going moderately at the time, "not rapidly, and not walking. I say not walking. There were two horses, and they were trotting. * * * Were not going fast. * * * I would say it was about twice as fast as a person ordinarily walks"; that her attention was drawn to the accident by an exclamation of her companion, at which time the speed of the vehicle had been greatly decreased, and it came to a stop almost at that time.

Mrs. Cummings, who was riding in the coupé, and seated on the left-hand side, testified that the whiffletree or splinter bar struck the boy; "I should say we were going at that time moderately slow. The driver stopped suddenly;" that she "saw the boy standing on the street. He was standing in the street at the time he was injured. At the time he was struck. I did not know how long he had been standing there. I had seen him just at that moment"; that she only saw him just when he was struck, and at that time he was facing her. In answer to the question, "As a matter of fact, could you tell whether he had been struck by some front portion of the horse, and turned around at that time?" she said, "Yes; because the boy was standing right in the street"; that she did not see the boy backing or jump. And she further testified that she hardly had an opportunity to make up her mind what the boy was doing at the moment, but she thought he was standing there; that "I did not know that he was standing there any appreciable length of time. I did not know that it was any more than a moment. The wagon was in motion in a straight line all this time. * * * I do not know how near the horse the boy was standing when I saw him. I did not measure how much space there was, so I cannot tell. My recollection is that he was quite a distance from the horse. I do not know how much. I do not know how much to the left-hand side. I do not know if there was an appreciable distance. I think the boy was not touching the horses at the time I saw him."

The care taker of a house opposite where the accident occurred testified that he saw the gear behind the horses strike the boy; that the boy was passing over the crosswalk, and that the pony cart had reached Amsterdam avenue, and the boy kept looking kind of sideways, watching the pony cart; that he heard the driver holloa, "Hey, Johnnie," and when that happened the boy fell, and the driver

stopped; that after taking the first step from the sidewalk the boy "kept kind of shying. Looking at the pony cart. The cart was coming from Riverside Drive. It was in Amsterdam avenue, maybe a little further down. It was not across the tracks. Not quite to the tracks. He was kind of shying to the uptown side. His face was towards downtown. His face was towards the pony cart. And the pony cart was west of the tracks of Amsterdam avenue. He was looking towards the pony cart. He was looking towards the west." This witness also testified, in substance, that he did not watch the boy after he left the sidewalk until his attention was drawn to him by the holloaing of the driver. On cross-examination he was asked, "Do you want to correct your testimony that you did not see the boy after he left the curb until he was struck?" to which he made answer, "I seen the boy shying all until he was struck."

Another witness, who was passing northerly over the same crosswalk, about 10 or 15 feet to the south of where the boy was hurt, but did not see the accident, testified that he heard some one, who he supposed was the driver, say, "Hey, there," and looked in front of him, and saw the boy on his back.

Other witnesses were called by the defendants, but their evidence relates principally to measurements of the vehicle and horses, and to the injuries, and they gave no material evidence with reference to the manner in which the accident occurred. We have not stated all of the testimony, but sufficient for the determination of the question presented.

It will be seen that this evidence did not contradict the testimony of the boy that he looked and saw the coupé at some considerable distance away before proceeding to cross the street, nor did it contradict the evidence that the street to the north of the coupé was free and unobstructed. The evidence did not show the speed at which the pony cart was approaching, or its line of travel, and the testimony as to its position at the time of the accident was quite conflicting. It will also be noted that the witnesses called by the defendants did not agree with reference to the manner in which the accident occurred. Both the boy and the driver of the vehicle had equal rights in the street, and it was the duty of each to exercise reasonable care in the exercise of such right. We think, upon the evidence of the defendants' witnesses, that the evidence introduced in behalf of the plaintiff, which was not contradicted, and the inference that might reasonably be drawn therefrom, presented questions for the jury as to whether this boy was guilty of negligence which was the proximate cause of the injuries, and also as to whether the accident was not caused by the negligence of the driver. Morrissey v. Railroad Co., 18 App. Div. 67, 45 N. Y. Supp. 444; Bank v. Sloan, 135 N. Y. 371, 32 N. E. 231; Dolan v. Canal Co., 71 N. Y. 285; Hart v. Bridge Co., 80 N. Y. 622; Hodges v. Express Co., 39 App. Div. 545, 57 N. Y. Supp. 318; Green v. Railway Co., 42 App. Div. 160, 58 N. Y. Supp. 1039; Atkinson v. Oelsner (Sup.) 10 N. Y. Supp. 822; Laidlaw v. Sage, 158 N. Y. 73, 52 N. E. 679, 44 L. R. A. 216.

If we are right in these conclusions, this was not a proper case for the application of the rule to which exception was taken; and with—

out considering the other exceptions, which relate to matters that will not necessarily arise upon a new trial, the judgment and order appealed from should be reversed, and a new trial granted, with costs ·to appellant to abide the event. All concur.